30 C.C.P.A. (Patents)

## In re RUZICKA.

### Patent Appeal No. 4661.

Court of Customs and Patent Appeals.

Dec. 1, 1942.

C. P. Goepel, of New York City, for appellant.

W. W. Cochran, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting claims 4, 10 and 11 of appellant's application for a patent entitled "Artificial Charcoal and Method of Making Same." Claim 4 is an article claim, and claims 10 and 11 are method claims. No claims were allowed.

Claim 4 reads as follows: "4. An artificial charcoal consisting of the end products of pulverized charcoal and a coking binder in which the pulverized charcoal has a granulation smaller than charcoal dust, in the proportions of the binder being about at least 20% by weight of the charcoal and not more than 30% and thoroughly mixed under heat without external pressure applied to the mix, under a coking action, at temperatures between 500° C. and 1200° C., said end products being fine, foamy, tenacious and resistant to dumping, the pores of which are within the order of magnitude of about 2 to 30 microns, while the resistance to pressure is not below 60 kg. per square centimeter, and the friability under test is less than 5%."

Claim 10 is illustrative of the method claims and reads as follows: "10. The method of making an artificial charcoal which consists in subjecting a finely pulverized wood charcoal of a granulation smaller than charcoal dust, to the action of an organic binder under thorough and homogeneous mixing action, to form a charge of said charcoal and binder ranging from pulverulent to a dough like paste in the proportions of 20% to 30% by weight of the initial charcoal, under the action of a steam heated mixing and kneading machine, and without previous pressure applied to said charge, subjecting the charge directly to the action of temperatures of between 500° C. and 1200° C., after tamping the same therein, in a coking operation."

All of the claims were rejected upon the following references:

Kingsford (British), 1,671, Jul. 15, 1859;

Eckert, 1,213,763, Jan. 23, 1917;

Stafford, 1,609,097, Nov. 30, 1926;

Thomsen, 1,839,277, Jan. 5, 1932.

Claim 4 was additionally rejected as vague and indefinite in the terms "dumping" and "friability under test."

Appellant's alleged invention is sufficiently described in the quoted claims. His application states that the product is "specially suitable for industrial, electrochemical and metallurgical uses."

The patent to Kingsford relates, among other things, to the preparation of peat and charcoal for fuel. After reciting a process for the preparation of peat for fuel the patent states: "* * * I manufacture in a somewhat similar way an artifical fuel from peat charcoal dust; the process is as follows:—Charcoal dust or ground charcoal is mixed with a certain quantity of pitch, resin, or other tarry matters, and then heated to a temperature not exceeding 300° Farenheit; in this state it is pressed into moulds of any convenient form, and afterwards carbonized in close retorts or otherwise; the pitch is ground to a fine powder and thoroughly mixed with the charcoal dust; it thus acts to re-combine the particles of charcoal, producing a very hard and superior coke suitable for industrial or metallurgical purposes."

148

One of the claims of the patent reads as follows: "2ndly, an artificial fuel composed of ground peat charcoal, or peat charcoal dust mixed with pitch, resin, or other similar substances compressed and afterwards converted into coke by the process of re-charring."

The Eckert patent discloses a method of making coke, which consists of mixing ground pitch with coke "breeze" in the proportions of ten percent coke breeze to ninety percent pitch. The mixture is then heated to drive off the volatile matter and reduce the mixture to coke.

The patent to Stafford relates to the manufacture of charcoal briquettes. The example given in the patent states:

"Thus for example, I may take 800 pounds of charcoal, of which 50% or so is in the form of powder, say not substantially coarser than ordinary sand, or all in powder form, if so desired, and add 150 to 350 or 400 pounds of wood tar or say half this amount of wood tar pitch. These are well mixed as above referred to, and from 15 to 35 or even 50 pounds of starch are then added, and well mixed. Then from 200 to 800 pounds of water, (say about 450 lbs.) are added, and well mixed while heating the mass, e.g., by introducing steam. The heating may be carried up to 85 to 100° C., more or less, whereby they develop strength significantly owing to the binding power of the starch. The mass is molded as above described, into briquettes. The briquettes can, if desired, be partly or wholly dried, in the open air, e.g., in a warm room or in the sun, or in any common drying shed. In order to make the tar or pitch effective as a binder, in the manner contemplated by this invention however, these preliminary starch bound briquettes are heated up to a temperature of 300° to 400° C., or above, whereupon the tar or pitch is carbonized to charcoal or coke itself thereby producing a binder effective at any higher temperature. Since the binder is essentially coked carbon, these briquettes are stable and strong at high temperatures."

The Thomsen patent relates to the carbonization of wood or woody substances yielding charcoal and volatile chemicals. It contains the following statement:

"Powdered charcoal is an almost valueless commodity. Briquetting with starch paste, dextrin, tar, pitch etc. is an ancient remedy but introduces the difficulty that the product is *on* longer charcoal, but a mixture of charcoal and the binder.

"I solve this difficulty by utilizing some cheap binding material, thus permitting a large quantity to be used and then subjecting the briquette to recarbonization whereby the binder is itself converted into charcoal."

■ Appellant's brief sets forth the elements of the claims relied upon by him for patentability as follows:

"There are three claims involved and each one is confined to a claim:

"(a) in which the granulation of the particles of charcoal is smaller than charcoal dust;

"(b) in which the mix is not subjected to 'external pressure', such as is applied to briquettes, and in the method claims also, the requirement that the mix is subjected to 'tamping' in the cohering operation;

"(c) in which the proportioning of binder is 20 to 30% by weight of the charcoal (not 10% as stated in the Statement);

"(d) in which the temperature is 500° C to 1200° C."

The Board of Appeals in its decision stated: "The claims have been rejected as not patentable over the state of the art. The prior art discloses treatment of charcoal by mixing it with a cokable binder and subjecting the mixture to temperatures sufficient to carbonize all ingredients. On consideration of the terms of the claims we find nothing highly critical. The proportion of binder is stated in rather wide scope and appears to be nothing more than a matter of choice in any case, determined by routine tests. Likewise the temperature is quite broad from 500° C. to 1200° C. and not critical. The degree of fineness of the pulverization of the charcoal is not critical and besides it is stated in very broad indefinite terms in the claims as to a granulation smaller than charcoal dust. The reference to being resistant to dumping and degree of friability is likewise not critical nor inventive. The examiner has sufficiently applied the citations and we find no error therein and are in agreement with his conclusions as to lack of invention."

Appellant's counsel rightly criticizes the use of the word "highly" in the decision of the board, wherein it stated "On consideration of the terms of the claims we find nothing *highly* critical." (Italics ours.) If it should be presumed from the use of the word "highly" that the board found that the proportions set forth in the claims are not shown in the prior art and are critical, but

not highly so, we would feel compelled to reverse the decision, but the language following the sentence shows that the board applied the usual and well-known rule of criticalness in patent law, meaning a difference in kind rather than in mere degree. It is therefore clear to us that the word "highly" was carelessly used by the board, and no significance should be attached to its use.

With respect to the element of the claims reciting the use of pulverized charcoal having a granulation "smaller than charcoal dust," the examiner in his statement made the very pertinent inquiry: "How fine is dust?" The board in its decision stated that the degree of fineness of the pulverization of the charcoal is not critical, and also stated that the term "granulation smaller than charcoal dust" is very broad and indefinite.

There is nothing in appellant's application defining the term charcoal dust with respect to its granulation, nor does the record anywhere define such term.

■ General dictionaries do not define charcoal dust in terms of granulation, nor have we been able to find such definition in any technical work upon the subject. All of the claims might well have been rejected upon this ground of indefiniteness.

■ However, assuming that charcoal dust could be defined in terms of granulation, we are in accord with the Patent Office tribunals that the difference between the use of charcoal dust and the use of pulverized charcoal having a granulation finer than that of charcoal dust is not critical, but produces a product merely different in degree and not different in kind. Indeed, appellant's application states:

"To charcoal dust which is sorted by dressing and which is ground, *if required,* there is uniformly added in mixing machines a finely divided binder which cokes as far as possible without detrimental residue, such as retort pitch or bubble tar or a mixture of both. The additions may be introduced in any desired state. Generally, the supplement of a dust-fine grinding is to be recommended, because it can be effected with particularly simple implements and renders possible a very fine distribution." (Italics ours).

Assuming as we have above without deciding that charcoal dust has a larger granulation than appellant's material, it is apparent that the claims would embrace pulverized or powdered charcoal having a granulation very close to that of charcoal dust, in which case it is clear that there would be no difference in kind between appellant's material and charcoal dust, but only a difference in degree.

We are in agreement with the Patent Office tribunals that this element does not assist patentability of the claims.

■ The next element of the claims relied upon by appellant is that which recites that the mix is not subjected to "external pressure."

While it is true that the references either directly or impliedly refer to external pressure, it is also true that appellant's application recites: "In this invention, neither briquetting nor pressure is used. I have found that by increasing the proportion of binder to pulverized fuel so that the binder is about 30% by weight of the pulverized fuel, the resulting product is less compact and more porous, but has otherwise the high pressure resisting characteristics. By preliminary stamping in the retort, 10 to 20% of the binder may be saved."

Appellant concedes that the word "stamping" is an error and that the word should be "tamping."

Webster's New International Dictionary (Second Edition) defines the word "tamp" as follows: "To drive in or down by a succession of light or medium blows, as to *tamp* earth; to *tamp* tobacco in a pipe."

It seems to us that while appellant does not regard tamping the mix as external pressure applied thereto, it is in fact merely external pressure of a different sort than that referred to in the references, and therefore we hold that this element may not be relied upon, in combination with the other elements, for patentability of the claims.

The claims recite that the amount of binder used is between twenty percent and thirty percent by weight of the charcoal used.

It will be observed from the quotation from the patent to Stafford that the amount of binder may range from about ten percent to fifty percent of the amount of charcoal used, and this range embraces the twenty to thirty percent range claimed by appellant. Therefore there is nothing novel in this element of the claims.

Finally, the claims recite the use of temperatures between 500° C. and 1200° C. for the final coking of the product.

The patent to Stafford recites temperatures of 300° to 400° C. "or above," and while the other references do not specify the temperatures employed, they do refer to coking, and it must be assumed that sufficiently high temperatures are employed to accomplish that result. Appellant's brief states: "This mix has been subjected to 500° C to 1200° C. This range is acknowledged in the textbooks to be a range known as high coking."

It thus appears that appellant admits there is nothing novel in the temperatures employed, and that he uses a well known coking range.

We are in agreement with the Patent Office tribunals that the claims lack patentability over the cited prior art, and to the extent that appellant's product differs from the prior art it is not a difference in kind but a difference in degree not involving the exercise of the inventive faculty.

In view of our conclusion it is not necessary for us to discuss the additional ground of rejection of claim 4.

The decision appealed from is affirmed.

Affirmed.